IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

ARTHUR WHITLOW,                    )
                                   )
v.                                 )          NO. 3:20-cv-00451-SRW
                                   )
WESTROCK SERVICES, LLC,            )
                                   )
         Defendant.                )

<u>MEMORANDUM OPINION AND ORDER</u>[1]

Plaintiff Arthur Whitlow filed this action under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*. ("Title VII"), the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 *et seq*. ("ADA"), and the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621 *et seq*. ("ADEA"), against Defendant WestRock Services, LLC, his former employer. (Doc. 1). Plaintiff alleges that Defendant discriminated against him based on his race, disability and age by wrongfully terminating his employment.

Before the court are Defendant's motion for summary judgment (Doc. 19) and motion to strike, or in the alternative, notice of objections to portions of Plaintiff's evidentiary submission and motion to take judicial notice (Doc. 26). For the reasons set forth below, the court concludes that Defendant's motion to strike is due to be denied, and Defendant's motion for summary judgment is due to be granted.

I.       **Motion to Strike or Notice of Objections**[2]

---

[1] On August 18, 2020, the parties consented to final dispositive jurisdiction by a Magistrate Judge pursuant to 28 U.S.C. § 636(c). (*See* Doc. 11; Doc. 12).

[2] Courts have taken different approaches in addressing motions to strike in the context of summary judgment, but essentially reach the same end.

Defendant seeks to strike Defendant's confidential position statement, Doc. 24-4, and Willie Wright's Equal Employment Opportunity Commission ("EEOC") charge and subsequent complaint, Doc. 24-3, submitted in support of Plaintiff's response in opposition to Defendant's motion for summary judgment. (Doc. 26). In the alternative, Defendant requests that the court take judicial notice of the prior order in the Willie Wright litigation (Case No. 3:18-cv-7369). *Id*. at 1.

Defendant contends that its confidential EEOC position statement submitted to the Commission in response to Plaintiff's charge of discrimination should be stricken because pleadings may not be considered as evidence. *Id*. at 1-2. Defendant asserts, in essence, that there is a blanket prohibition against any consideration of an EEOC position statement when the court analyzes a summary judgment motion. It somewhat misleadingly states that "[t]he stance in the Eleventh Circuit is clear" that "EEOC Position Statements may not be considered as evidence in opposition to Defendant's Motion for Summary Judgment and may not be used to create an issue of fact," Doc. 26, at 3-4 and, in support, cites to *Moore v. Hale*, No. 2:08-CV-202, 2010 WL

---

Some courts "have noted that evidence submitted in support of motions or pleadings may be 'challenged by motions to strike because the Federal Rules provide no other means to contest [its] sufficiency.'" *Morris v. Precoat Metals*, 2013 WL 830868, *2 (N.D.Ala. March 4, 2013) (quoting *Anderson v. Ga. Gulf Lake Charles, LLC*, 2008 WL 919716, *1 (W.D.La. Apr. 4, 2008)). Other courts have determined that "[t]he correct approach is to object to an opposing party's factual assertion on the ground that it 'cannot be presented in a form that would be admissible in evidence.'" *Norris v. GKN Westland Aerospace, Inc.*, 2013 WL 440755, *1 (M.D.Ala. Feb. 5, 2013) (quoting Fed.R.Civ.P. 56(c)(2)). When a court applying the latter approach is presented with a motion to strike material outside the pleadings, it "will construe this motion as a notice of objection." *Id.*

"Although the form of the [motion to strike] is not grounded in a federal procedural rule, the substance of the motion[ ] will be considered." *Stuckey v. Alabama Bd. Of Pardons and Paroles*, 2012 WL 3670644, *1 n. 2 (M.D.Ala. Aug. 27, 2012).

*Allen v. S. Commc'ns Servs., Inc.*, 963 F. Supp. 2d 1242, 1248 (N.D. Ala. 2013); *Keller v. Hyundai Motor Mfg.*, No. 2:19CV207, 2020 WL 8614588, at *1 (M.D. Ala. Dec. 10, 2020) (treating motion to strike as a notice of objections). Defendant styled its motion to strike, in the alternative, as a notice of objection. Whatever the style, the Court will refer to Defendant's filing as a "motion to strike" for the sake of brevity.

11507178, at *5 n.13 (N.D. Ala. Aug. 30, 2010), *aff'd*, 461 F. App'x 909 (11th Cir. 2012), a lone unpublished district court case, which determined that an EEOC position statement was not evidence in the case and could not be used to create an issue of fact.[3] However, *Moore* does not set out the definitive law in the Eleventh Circuit; courts from various circuits, including the Eleventh Circuit, do not recognize such a blanket prohibition. *See Amador v. Jones Lang Lasalle Americas, Inc.*, 763 F. App'x 821, 823-24, 826 (11th Cir. 2019) (affirming district court's determination that position statement at trial was prohibited in part because it included issues related to claims previously dismissed but allowed it to be used in cross-examination and potentially to impeach witnesses on their knowledge of certain areas of inquiry found within the position statement); *Swartz v. Wabash Nat. Corp.*, 674 F. Supp. 2d 1051, 1057 n.6 (N.D. Ind. 2009) ("An EEOC position statement is admissible to the extent that it is inconsistent with other evidence in the record."); *Equal Emp. Opportunity Comm'n v. NDI Off. Furniture LLC*, No. 2:18-CV-01592-RDP, 2021 WL 2635356, at *4 (N.D. Ala. June 25, 2021) ("Defendant's position statement does not emphasize Alicia's qualifications, but rather her failure to complete an application and submit a resume to the proper employee. . . . Of course, Defendant is free to explain why it did not address Alicia's qualifications. But, this evidence is nevertheless relevant and probative to the veracity of Defendant's asserted defenses."); *US Equal Emp. Opportunity Comm'n v. Rent-A-center E., Inc.*, No. 16-2222, 2018 WL 11326934, at *5 (C.D. Ill. Jan. 25, 2018) ("Even if the document was hearsay, Defendant's position statement to the EEOC is admissible to the extent

---

[3] In support, the *Moore* court cited *Bowden v. Wal-Mart Stores, Inc.*, 124 F. Supp.2d 1228, 1236 (M.D. Ala. 2000) for the proposition that pleadings are not evidence. However, *Bowden* was not an employment action, but involved claims pertaining to products liability and negligence. There, the court stated, "Plaintiff's subsequent responses illuminate no evidence suggesting that a genuine factual dispute remains for trial. While his briefs . . . lay out the elements of negligence nicely, the opinions, allegations, and conclusory statements of counsel do not substitute for evidence. It is not for the court to manufacture arguments on Plaintiff's behalf." *Id.* (citations omitted).

that it constitutes an admission by a party opponent. An employer's position statement to the EEOC may be admissible as an admission of a party opponent or a prior inconsistent statement and the jury can determine what weight to give it."); *Armstrong v. Marathon Petroleum Co., LP*, No. 3:16-CV-00115, 2018 WL 2976732, at *3 (S.D. Tex. May 1, 2018), *report and recommendation adopted*, No. 3:16-CV-00115, 2018 WL 2967327 (S.D. Tex. June 13, 2018); *Mugavero v. Arms Acres, Inc.*, No. 03CIV05724, 2009 WL 1904548, at *4 (S.D.N.Y. July 1, 2009) ("Defendants' position statements--if offered by Plaintiff--are not hearsay because they are admissions [under Fed.R.Evid. 801(2)(D)]. . . . Defendants have not identified any specific prejudice they would suffer if their own statements to the EEOC concerning Plaintiff's charges were admitted into evidence."); *Buckley v. Dolgencorp, Inc.*, No. C2-CV-04-483, 2005 WL 8161919, at *2 (S.D. Ohio Dec. 22, 2005) ("Simply stated, '[a]n employer's position statement in an EEOC proceeding may be admissible to the extent it constitutes an admission, or to show the employer has given inconsistent statements in justifying its challenged decision, which may tend to prove that its stated reasons are pretexts.'") (citation omitted); *Gage v. Metro. Water Reclamation Dist. of Greater Chicago*, 365 F. Supp. 2d 919, 936-37 (N.D. Ill. 2005) (same); *Forsberg v. Pefanis*, No. 1:07-CV-3116, 2009 WL 901015, at *1 n.4 (N.D. Ga. Jan. 26, 2009), *report and recommendation rejected on other grounds*, No. 1:07-CV-3116, 2009 WL 901012 (N.D. Ga. Mar. 27, 2009), *aff'd*, 634 F. App'x 676 (11th Cir. 2015) (a "plaintiff may introduce defendants' position statements in response to her own EEOC charge 'to the extent [they] constitute an admission, or to show that the employer has given inconsistent statements in justifying its challenged decision, which may tend to prove that its stated reasons are pretexts.'") (citation omitted).

Plaintiff cites only once to Defendant's position statement in his brief, in support of the following assertion, as follows: "One year later, in September 2019, WestRock purportedly

terminated Mr. Whitlow for failing to complete his assigned work and for taking excessive breaks while still in a 1-year probationary period from his prior written warning for the same offenses." (Doc. 24, at 3). There is nothing objectionable about this assertion, although the position statement on this topic provides more detail. *See* Doc. 24-4, at 2-3. Defendant in fact cites similar information in its own brief. *See* Doc. 20, at 18-19. Defendant does not argue any other reason to strike its position statement from consideration other than that the statement is part of the pleadings and therefore should not be considered. The court finds that the limited use of the position statement in this instance is permissible or at least harmless. The court declines to strike the position statement and will simply give the statement whatever consideration it deserves, in accordance with case law.

Defendant next contends that Willie Wright's EEOC charge and complaint should be stricken because Wright was never disclosed as a witness in Plaintiff's 26(a) disclosures, the Wright charge and complaint were not part of Plaintiff's deposition, and the Wright charge and complaint are not relevant to Plaintiff's claims in this case.  (Doc. 26, at 2-3).

Rule 37(c)(1) states that "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." *Id*. Rule 26(e)(1) provides that "[a] party who has made a disclosure under Rule 26(a) . . . must supplement or correct its disclosure or response: (A) in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information *has not otherwise been made known* to the other parties during the discovery process or in writing . . . ." Fed. R. Civ. P. 26(e)(1)(A) (emphasis added). Plaintiff admits that he did not list Wright as a witness in his Rule 26 disclosures, but argues that Defendant cannot assert that it was unaware of Wright's complaint and charge because the documents were

produced by Defendant during discovery. (Doc. 28, at 3-4). In his Rule 26(a) disclosures, Plaintiff, identifying persons likely to have discoverable information, included "All witnesses identified in Defendant's Initial Disclosures," "All witnesses identified through the course of discovery," and "Any individual identified in a deposition or document produced in this case." (Doc. 26, at 15). In his deposition, Plaintiff specifically referenced Willie Wright. (Doc. 21-1, at pp. 130, 328-29). Here, the court finds that Plaintiff did not need to submit a supplemental disclosure as the information was already known by Defendant. As the court in *Braggs v. Dunn*, No. 2:14CV601, 2017 WL 659169 (M.D. Ala. Feb. 17, 2017) explained:

> The Advisory Committee Notes to Rule 26(e) provide that there is 'no obligation to provide supplemental or corrective information that has been otherwise made known to the parties in writing or during the discovery process, as when a witness not previously disclosed is identified during the taking of a deposition....' Similarly, Professors Wright and Miller explain that this provision 'recognize[s] that there is no need as a matter of form to submit a supplemental disclosure to include information already revealed by a witness in a deposition or otherwise through formal discovery.' 8 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2049.1." *Brown v. Chertoff*, No. 4:06CV002, 2009 WL 50163, at *5 (S.D. Ga. Jan. 7, 2009) (Edenfield, J.) (citation omitted), *aff'd sub nom., Brown v. Napolitano*, 380 Fed.Appx. 832 (11th Cir. 2010). Moreover, "[d]istrict courts in this circuit ... generally will not strike the testimony of a witness whose role may not have been wholly revealed during the course of discovery. Rather, the focus is on whether the moving party is aware that the affiant is an individual with discoverable information." *Ojeda-Sanchez v. Bland Farms, LLC*, No. 6:08CV096, 2010 WL 2382452, at *2 (S.D. Ga. June 14, 2010) (Edenfield, J.) (citing cases).

*Id*. at *5; *Keller v. Hyundai Motor Mfg.*, No. 2:19CV207-MHT, 2020 WL 8614588, at *1 (M.D. Ala. Dec. 10, 2020) ("Defendant's motion to strike certain affidavits and portions of plaintiff's declaration (doc. no. 77) is denied. Defense counsel was made aware of the affidavits during plaintiff's deposition and should have known that there was a possibility that plaintiff would use the affidavits to support his claims. The fact that defense counsel was not provided contact information for the two affiants is not enough to require their exclusion. *See* Fed. R. Civ. P. 26(e) advisory committee's note to 1993 amendment."); *Gould v. Transamerica Life Ins. Co.*, No. CA 11-0730, 2012 WL 13048566, at *7 (S.D. Ala. Oct. 16, 2012) ("[O]nce witnesses are disclosed by

one party to the other party, both parties are aware that such witnesses have discoverable information such that any failure to supplement prior Rule 26(a) disclosures is harmless.").

Plaintiff argues that the inclusion of Wright's charge and complaint is relevant to show that other employees have alleged that Defendant WestRock discriminated against them and that Wright, an African-American, was also terminated by Defendant, which is relevant to Plaintiff's allegation that Defendant engaged in a pattern and practice of terminating African-Americans. (Doc. 28, at 6). "The Eleventh Circuit has recognized certain circumstances where examples of discrimination against other employees can serve as evidence of discrimination." *Burns v. Tuskegee Univ.*, No. 3:19-CV-509, 2021 WL 1034971, at *7 (M.D. Ala. Mar. 17, 2021) (citing *Goldsmith v. Bagby Elevator Co., Inc.*, 513 F.3d 1261, 1285-86 (11th Cir. 2008)). This so-called "me too" evidence has been allowed to prove a defendant's motive, intent, or plan to discriminate against a plaintiff. *Goldsmith*, 513 F.3d at 1286; *Capasso v. Collier Cty.*, No. 212CV499, 2014 WL 12607856, at *4 (M.D. Fla. Nov. 26, 2014). "This 'me too' evidence is typically allowed when 'it involves employment decisions by the same person who made decisions affecting the plaintiff,' and the other employee held a position similar to the plaintiff and suffered an adverse employment action similar to the plaintiff." *Burns*, 2021 WL 1034971, at *7 (citations omitted). "[I]n determining the relevance of 'me too' evidence courts consider other factors such as: 'whether such past discriminatory behavior by the employer is close in time to the events at issue in the case, whether the same decisionmakers were involved, whether the witness and the plaintiff were treated in a similar manner, and whether the witness and the plaintiff were otherwise similarly situated.'" *Davis v. City of Lake City*, No. 3:10-CV-1170-J-34TEM, 2013 WL 12091324, at *19 (M.D. Fla. Mar. 15, 2013), *aff'd sub nom. Davis v. City of Lake City, Fla.*, 553 F. App'x 881 (11th Cir. 2014) (quoting *Nuskey v. Hochberg*, 723 F. Supp. 2d 229, 233 (D.D.C. 2010)).

"The court is capable of sifting evidence, as required by the summary-judgment standard,

without resort to an exclusionary process," *Keller*, 2020 WL 8614588, at *1, and it will give Wright's EEOC charge and complaint whatever, if any, consideration is warranted in assessing Defendant's motion for summary judgment.

Accordingly, Defendant's motion to strike is due to be denied.

## II.    Factual Background

Defendant WestRock operates a paperboard card manufacturing facility in Lanett, Alabama, which produces packaging materials, primarily for the beverage industry. (Doc. 21-9, at ¶ 3). Plaintiff Whitlow, a black male who was born in 1960, was hired by Defendant in 1997. (Doc. 21-1, at pp. 18-19, 166).[4] Plaintiff was aware that Defendant had an Equal Employment Opportunity ("EEO") policy prohibiting discrimination against employees based on race, age, or disability and that the policy required an employee to make a timely report of concerns regarding any discrimination. (Doc. 21-1, at pp. 173-74; Doc. 21-9, at ¶ 4).

Defendant provides routine training (at least yearly) to employees on its plant rules, code of conduct, and plant general safety rules. (Doc. 21-9, at ¶ 5). Defendant's plant rules, of which Plaintiff was aware, specifically list the following as offenses that "will result in disciplinary action up to and including termination of employment":

> 8. Violating the WestRock Code of Conduct or other applicable policies.
> . . . .
> 11. Neglect of duty, inattention to one's job, or failure to meet job performance requirements.
> 12. Being away from one's work station without authorization.
> . . . .
> 21. Taking length or excessive breaks (max 15 min. break/lunch 30 min. lunch – See break policy).

(Doc. 21-2, at 2-4).

Defendant also had a published break policy that allowed, during a 12-hour shift, one 15-

---

[4] Unless otherwise stated, citations are to the Court's ecf pagination. References to actual transcript or exhibit pages are denoted with a "p.".

minute break in the morning, one 30-minute lunch break, and one 15-minute break in the afternoon. (Doc. 21-2, at 80; Doc. 21-9, at ¶ 12). Modifications to the break policy required management approval. (Doc. 21-9, at ¶ 13; Doc. 21-1, at p. 225). Plaintiff understood the break policy. (Doc. 21-1, at pp. 217-19).

Plaintiff worked as an A shift (7:00 a.m. to 7:00 p.m.) cutter operator in the cutting department and reported to his manager, Carl "C.J." Gibson. (Doc. 21-9, at ¶ 6; Doc. 21-3, at ¶¶ 3-4). Plaintiff advanced in the company and was among the highest paid operators at the time of his termination. (Doc. 21-1, at p. 326).

In addition to their production responsibilities, all cutter operators are required to perform weekly preventative maintenance ("PM") tasks on their respective machines. (Doc. 21-3, at ¶ 5). A cutter operator's weekly PM tasks are primarily clearing and lubricating the machine and are far less involved than the maintenance department's monthly PM of the machine. (Doc. 21-3, at ¶ 6). All cutter operators are trained on the weekly PM tasks and work instructions. (Doc. 21-1, at pp. 228-29). Plaintiff never told Defendant that he needed an accommodation to perform his weekly PM tasks. (Doc. 21-1, at pp. 339-40, 342).

Each time a weekly PM is performed, cutter operators are required to complete 15 tasks outlined on the "PM Sheet," mark the tasks complete, and initialize the sheet. (Doc. 21-3, at ¶ 8). Depending on timing and production needs, either one cutter operator alone or two cutter operators simultaneously performed the weekly PM. (Doc. 21-3, at ¶ 9). According to Gibson, two cutter operators should complete the machine's PM in two hours or less and one cutter operator alone should complete the machine's PM in four hours or less. (Doc. 21-3, at ¶¶ 10, 12). If two cutter operators performed the PM, an audit was not necessary because two people verified completion of the work. (Doc. 21-3, at ¶ 11). However, if one cutter operator performed the PM, an audit was required. (Doc. 21-3, at ¶ 13).

9

In April 2016, after being disciplined for quality errors, Plaintiff received a written warning for violating the break policy and taking excessive breaks. (Doc. 21-2, at 97; 21-3, at ¶ 14(a)). At his deposition, Plaintiff agreed that he violated the break policy. (Doc. 21-1, at pp. 236-39). During this 2016 discipline, Plaintiff was reminded of the break policy and counseled that he would be held accountable for future violations and that he could be terminated for violating the policy. (Doc. 21-3, at ¶ 14(a)(i); Doc. 21-1, at pp. 237-38).

On March 6, 2018, Plaintiff received his annual performance evaluation. (Doc. 21-3, at ¶ 14(b)). In this annual review, Gibson commented that Plaintiff needed to "follow plant rules with breaks." (Doc. 21-2, at 100; Doc. 21-3, at ¶ 14(b)). At his deposition, Plaintiff agreed that he needed to improve his break policy compliance. (Doc. 21-1, at p. 260).

On November 16, 2018, Plaintiff received a three-day suspension and was placed on a one-year probationary period for violating the break policy by taking excessive breaks and for failing to perform his weekly PM tasks on October 31, 2018. (Doc. 21-2, at ¶ 14(c); Doc. 21-9, at ¶ 14). The investigation revealed that Plaintiff took six breaks on October 31, 2018, totaling approximately 3.5 hours of breaks during a 12-hour shift; that of the 15 required tasks on the PM sheet, Plaintiff marked that he completed seven tasks, but only three tasks were actually completed; and that Plaintiff falsified company documents. (Doc. 21-3, at ¶ 14(c)(i)-(iii); Doc. 21-9, at ¶¶ 14, 16). Plaintiff was warned that "[a]dditional incidents will result in further disciplinary action up to and including termination." (Doc. 21-9, at 31). In his deposition, Plaintiff testified that his November 2018 discipline had nothing to do with his race, age, or alleged disability. (Doc. 21-1, at pp. 335-36). Plaintiff admitted that he did, in fact, violate Defendant's break policy on October 31, 2018; that he did not complete his PM tasks; and that he did not fill out the PM paperwork properly. *Id.* at p. 335.

On September 13, 2019, Plaintiff, who was still on probation, was terminated for

committing the same infractions committed on October 31, 2018 – violating the break policy by taking excessive breaks, failing to complete his required PM tasks, and falsifying company documents during his September 8, 2019 shift. (Doc. 21-3, at ¶ 15; Doc. 21-9, at ¶ 21). On Sunday, September 8, 2019, Plaintiff worked a 12-hour shift from 7:00 a.m. to 7:00 p.m. (Doc. 21-3, at ¶ 16). Plaintiff finished running production on his machine and had ten hours to perform the weekly PM tasks – more than twice the time it takes one cutter operator to perform the weekly PM. (Doc. 21-3, at ¶¶ 18, 21). Of the 14 required tasks on the PM sheet, Plaintiff did not complete five of them. *Id*. at ¶ 21(a). Moreover, of the nine tasks that Plaintiff marked as completed, several were found either not to be completed or performed poorly. *Id*. at ¶¶ 22-23.

Plaintiff's deficiency was discovered during an audit on Monday, September 9, 2019, which prompted an investigation to determine how the error occurred. *Id*. at ¶¶ 23-24. Surveillance video showed Plaintiff was away from work in break areas for a significantly greater amount of time than allowed under the break policy. (Doc. 21-3, at ¶ 25; Doc. 21-9, at ¶ 22). The surveillance video reflected that Plaintiff took five breaks totaling over 2.5 hours. (Doc. 21-3, at ¶ 25). The decision to terminate Whitlow's employment was made by the general manager, Neil Taylor, after consulting with Kim Gradic, the human resources manager. (Doc. 21-9, at ¶ 29; Doc. 21-8, at ¶ 25). According to Taylor, numerous WestRock employees have been disciplined for break violations, but no employee has ever violated the break policy to the extent that Plaintiff did. (Doc. 21-9, at ¶ 26). Gradic also avers that she was not aware of any employee who had violated the break time policy as Plaintiff did, failed to complete work assignments, and falsified company documents, all while on probation for committing exactly the same violations less than one year before. (Doc. 21-8, at ¶ 14). Gibson, Taylor and Gradic all attest that Plaintiff never complained that he thought he was being discriminated against based on his race, age, alleged disability, or any other protected trait or activity. (Doc. 21-3, at ¶ 27; Doc. 21-9, at ¶ 28; Doc. 21-8, at ¶ 19).

Plaintiff never requested an accommodation of any kind throughout his employment with Defendant. (Doc. 21-1, at pp. 339-40).

On or about October 18, 2019, Plaintiff filed a charge of discrimination with the EEOC, alleging that Defendant subjected him to age, race, and disability discrimination and that the discrimination took place on September 13, 2019. (Doc. 21-2, at 113). The EEOC issued a Notice of Rights to Sue on May 11, 2020. *Id*. at 117.

## III.    Legal Standard

A movant is entitled to summary judgment if it "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). For summary judgment purposes, an issue of fact is "material" if, under the substantive law governing the claim, its presence or absence might affect the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record, including pleadings, discovery materials and affidavits], which it believes demonstrate the absence of a genuine [dispute] of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (alterations added); *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 593 (11th Cir. 1995) (holding that that moving party has the initial burden of showing there is no genuine dispute of material fact for trial). The movant may meet this burden by presenting evidence indicating that there is no dispute of material fact or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id*. at 322-24. If the movant fails to satisfy its initial burden, the motion for summary judgment will be denied. *Kernel Records Oy v. Mosley*, 694 F.3d 1294, 1300 (11th Cir. 2012), *cert. den.*, 133 S.Ct. 1810 (2013). If the movant adequately supports its motion, the burden shifts to the opposing party to establish – " by  producing affidavits or other

relevant and admissible evidence beyond the pleadings"—specific facts raising a genuine issue for trial. *Josendis v. Wall to Wall Residence Repairs, Inc.*, 662 F.3d 1292, 1315 (11th Cir. 2011); *Dietz v. Smithkline Beecham Corp.*, 598 F.3d 812, 815 (11th Cir. 2010); Fed. R. Civ. P. 56(c)(1)(A). The non-moving party cannot carry its burden by relying on the pleadings or by repeating conclusory allegations contained in the complaint. *Morris v. Ross*, 663 F.2d 1032, 1033-34 (11th Cir. 1981), *cert. denied*, 456 U.S. 1010 (1982).

"All affidavits [and declarations] must be based on personal knowledge and must set forth facts that would be admissible under the Federal Rules of Evidence[.]" *Josendis*, 662 F.3d at 1315; Fed. R. Civ. P. 56(c)(4). The court views the evidence and all reasonable factual inferences in the light most favorable to the nonmovant. *Miller's Ale House, Inc. v. Boynton Carolina Ale House, LLC*, 702 F.3d 1312, 1316 (11th Cir. 2012). However, "the nonmoving party 'must do more than show that there is some metaphysical doubt as to the material facts," and "[i]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Graham v. State Farm Mut. Ins. Co.*, 193 F.3d 1274, 1282 (11th Cir. 1999) (internal citations omitted). "'If no reasonable jury could return a verdict in favor of the nonmoving party, there is no genuine issue of material fact and summary judgment will be granted.'" *Morton v. Kirkwood*, 707 F.3d 1276, 1284 (11th Cir. 2013) (citation omitted).

If the nonmoving party fails to address properly the movant's assertion of fact as required by Rule 56(c), the court may:

(1) give an opportunity to support properly or address the fact;
(2) consider the fact undisputed for purposes of the motion;
(3) grant summary judgment if the motion and supporting materials--including the facts considered undisputed – show that the movant is entitled to it; or
(4) issue any other appropriate order.

Fed. R. Civ. P. 56(e). Under Rule 56(e), "summary judgment cannot be granted by default even if there is a complete failure to respond to the motion." Fed. R. Civ. P. 56(e) advisory committee's

notes to 2010 amendment. Thus, a court "cannot base the entry of summary judgment on the mere fact that the motion was unopposed, but, rather, must consider the merits of the motion." *United States v. One Piece of Real Prop. Located at 5800 SW 74th Ave., Miami, Fla.*, 363 F.3d 1099, 1101 (11th Cir. 2004). However, a "district court need not sua sponte review all of the evidentiary materials on file at the time the motion is granted, but must ensure that the motion itself is supported by evidentiary materials. At the least, the district court must review all of the evidentiary materials submitted in support of the motion for summary judgment." *Id.* at 1101-02 (citation omitted); *Ronald Sciortino Bankr. Est. v. Selene Fin., L.P.*, No. 1:18-CV-0981-AT-RDC, 2020 WL 5548340, at *3 (N.D. Ga. July 22, 2020), *report and recommendation adopted*, No. 1:18-CV-0981-AT, 2020 WL 5551020 (N.D. Ga. Aug. 11, 2020). Should this review reveal that the moving party is entitled to summary judgment, the court need not consider any legal or factual arguments the nonresponding party could have, but did not assert in opposition. *Spears v. Bay Inn & Suites Foley, LLC*, No. 1:19-00269-C, 2021 WL 2445889, at *3 (S.D. Ala. June 15, 2021) (citing *Whitney Bank v. Peavy*, No. CV 14-0080-C, 2014 WL 12573672, at *4 (S.D. Ala. July 31, 2014)).

**IV.   Discussion**

Plaintiff contends that Defendants unlawfully terminated his employment on September 13, 2019, because of his race, disability, and age, in violation of Title VII, the ADA, and the ADEA. As an initial matter, Defendant contends that any claims that Plaintiff may be alleging which stem from his November 2018 discipline, and any other claims arising from incidents occurring over 180 days from the filing of his EEOC charge on October 18, 2019, must be dismissed for failure to exhaust administrative remedies. In his response, Plaintiff does not address this argument, nor is it clear whether Plaintiff is in fact asserting any claims arising from any set of facts other than his termination on September 13, 2019.

Pursuant to Title VII, the ADEA, and the ADA, an employee alleging discrimination must

exhaust his administrative remedies before bringing a civil complaint in federal court. 42 U.S.C.

§ 2000e-5(e)(1). A plaintiff must first file a charge with the Equal Employment Opportunity

Commission ("EEOC") within 180 days after the alleged improper employment action. *See* 42

U.S.C. § 2000e-(5)(e)(1). Upon his or her filing a charge, the EEOC investigates the employer's

alleged discriminatory practice. 42 U.S.C. § 2000e-5(b).

A civil action can be brought only after the EEOC has notified the plaintiff of its decision

to dismiss the charges. 42 U.S.C. § 2000e-5(e)(1). An employee must completely exhaust the

administrative remedies available from the EEOC before filing suit in federal court. *See Sanchez*

*v. Standard Brands, Inc.*, 431 F.2d 455, 459 (5th Cir. 1970).[5] As a general rule, a plaintiff cannot

bring a lawsuit on a claim that was not included in his or her EEOC charge. *Zellars v. Liberty Nat.*

*Life Ins. Co.*, 907 F. Supp. 355, 358 (M.D. Ala. 1995) (citing *Alexander v. Gardner-Denver Co.*,

415 U.S. 36, 47 (1974)). The scope of an employment discrimination complaint is determined by

the EEOC charge and investigation. *See Gregory v. Georgia Dep't of Human Res.*, 355 F.3d 1277,

1280 (11th Cir. 2004).

A plaintiff is barred from pursuing any claim in a federal court action that is not "like or

related" to the claims asserted by the plaintiff in her EEOC charge, or that could not reasonably be

expected to arise during the course of the EEOC investigation. *See Sanchez*, 431 F.2d at 466-67.

Therefore, additional charges in a civil complaint, or in a second EEOC charge, which do not arise

naturally and logically from the facts presented to the EEOC are not related to the original charge,

and cannot be pursued in federal court.

Here, Plaintiff filed his sole EEOC charge on October 18, 2019, which is 180 days from

April 21, 2019. Thus, any allegations regarding his November 2018 discipline and any other

---

[5] *See Bonner v. City of Prichard, Ala.*, 661 F.2d 1206, 1209 (11th Cir. 1981) (holding that decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981, are binding in the Eleventh Circuit).

allegations arising before April 21, 2019 are not exhausted and are therefore due to be dismissed.

**A.      Title VII Claim**

Because there is no direct evidence of discrimination in this case, Plaintiff's claim turns on the outcome of the traditional *McDonnell Douglas* burden-shifting analysis. *See, e.g., Holly v. Clairson Industries, L.L.C.*, 492 F.3d 1247, 1255 (11th Cir. 2007) ("Under the controlling law in this Circuit, the burden-shifting analysis of Title VII employment discrimination claims is applicable to ADA claims.") (citation and internal punctuation omitted); *Cleveland v. Home Shopping Network, Inc.*, 369 F.3d 1189, 1193 (11th Cir. 2004) (applying *McDonnell Douglas* circumstantial evidence framework in ADA context); *Wascura v. City of South Miami*, 257 F.3d 1238, 1242 (11th Cir. 2001) ("In the absence of direct evidence of discrimination, a plaintiff may establish a *prima facie* case of an ADA violation . . . using the familiar burden-shifting analysis employed in Title VII employment discrimination cases.") (footnote omitted). Under this approach, the burden initially rests with the plaintiff to establish a *prima facie* case of discrimination, after which the burden of production shifts to the defendant to articulate a legitimate non-discriminatory reason for the challenged action. *See Cleveland*, 369 F.3d at 1193; *Wascura*, 257 F.3d at 1242-43. After a non-discriminatory reason is given, the plaintiff is "left with the ultimate burden of proving that [the defendant] intentionally discriminated against her because of her disability." *Cleveland*, 369 F.3d at 1193; *see also Wascura*, 257 F.3d at 1243.

To establish a *prima facie* case for race discrimination under Title VII, Plaintiff has the burden to show that (1) he is a member of a protected class, (2) he was qualified for the position, (3) he suffered an adverse employment action, and (4) he was replaced by a person outside his protected class or was treated less favorably than a similarly situated individual outside his protected class. *Herron-Williams v. Alabama State Univ.*, 805 F. App'x 622, 628 (11th Cir. 2020). In attempting to show that any proffered comparators were similarly situated, a plaintiff must show

that such comparators were "'similarly situated in all material respects.'" *Lewis v. City of Union City, Georgia*, 918 F.3d 1213, 1218 (11th Cir. 2019); *Knox v. Roper Pump Co.*, 957 F.3d 1237, 1247 (11th Cir. 2020). "A comparator must be so similar that she 'cannot reasonably be distinguished' from the plaintiff." *Vinson v. Tedders*, 844 F. App'x 211, 214 (11th Cir. 2021).

If the plaintiff succeeds in establishing a *prima facie* case of discrimination, the burden then shifts to the employer to offer a legitimate, nondiscriminatory reason for the employment action. *Id*. "If the employer meets its burden of production, the burden then shifts back to the employee to show that the proffered reason was really a pretext for unlawful discrimination." *Id*. "Although the intermediate burdens of production shift back and forth, the ultimate burden of persuading the trier of fact that the employer intentionally discriminated against the employee remains at all times with the plaintiff." *E.E.O.C. v. Joe's Stone Crabs, Inc.*, 296 F.3d 1265, 1273 (11th Cir. 2002).

Here, Plaintiff cannot establish the fourth prong of his *prima facie* case. Plaintiff does not allege that he was replaced by a person outside of his protected class. Nor does Plaintiff present evidence, beyond conclusory allegations, that he was treated less favorably than similarly situated individuals outside his protected class. Plaintiff does not offer evidence that any other WestRock employee – including Willie Wright, who was on an active one-year probation for failing to complete his PMs – falsified company documents and took excessive breaks, then committed exactly the same infractions less than one year later, but nevertheless was retained in employment. At his deposition, when asked if he knew of anyone who took too many breaks after being suspended for the same infraction less than a year before who was not terminated, Plaintiff answered that he did not know. (Doc. 21-1, at p. 325). Both Gradic and Taylor attest – with Taylor citing a litany of employee infractions for violating the break policy – that no employee violated the break time policy to the extent that Plaintiff did. (Doc. 21-8, at ¶ 14; Doc. 21-26(a)-(m)).

In his Complaint, Plaintiff alleges that Adam Montgomery and Jason Talbot, two Caucasian males, also took too many breaks on September 9, 2019 without being disciplined; Richard Burton received "three (3) DUIS" and was only given a three-day suspension; and a white employee named Josh (last name unknown) was allowed to serve a suspension one day at a time. (Doc. 1, at ¶ 15). However, in response to Defendant's motion for summary judgment, Plaintiff has not presented any evidence to support these allegations. First, Plaintiff did not present evidence that either Montgomery, Talbot, Burton, or Josh was on an active probation for break time violations, failure to complete mandatory weekly PM tasks, and falsifying company documents at the time of any alleged infractions. Second, Gradic investigated Plaintiff's allegations regarding Montgomery and Talbot's break activities on September 9, 2019, and the investigation and surveillance video footage revealed that they did not, in fact, take too many breaks. (Doc. 21-8, at ¶ 16). Third, Gradic attests that no employee named "Josh" or any other WestRock employee was allowed to serve a suspension one day at a time. *Id*. at ¶ 18. Lastly, Burton has never received discipline for failing to complete PM tasks, taking too many breaks or falsifying company documents, *id*. at ¶ 17, and, in any event, non-work-related DUIs are not comparable to work-related misconduct as engaged in by Plaintiff.

In his response, Plaintiff asserts that Wright was terminated for purportedly cutting a bad product, but two Caucasian employees – Denny McCenny and Adam Montgomery – engaged in the same conduct and were allowed to continue working at WestRock. (Doc. 24, at 12). However, this allegation is irrelevant here, as none of these individuals was similarly situated in all material respects to Plaintiff.

As an alternative to the *McDonnell Douglas* framework, a plaintiff may show that the evidence, viewed in the light most favorable to him or her, "'presents a convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination by the

18

decisionmaker.'" *Martin v. Shelby Cty. Bd. of Educ.*, 756 F. App'x 920, 922 (11th Cir. 2018)

(quoting *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2011)). "A 'convincing

mosaic' may be shown by evidence that demonstrates, among other things, (1) 'suspicious timing,

ambiguous statements . . . , and other bits and pieces from which an inference of discriminatory

intent might be drawn,' (2) systematically better treatment of similarly situated employees, and (3)

that the employer's justification is pretextual." *Lewis v. City of Union City, Georgia*, 934 F.3d

1169, 1185 (11th Cir. 2019) (citation omitted).

Here, Plaintiff points to no evidence that would be relevant to a convincing mosaic analysis

for race discrimination. Plaintiff alleges that during his employment Gibson spoke rudely to him

and other African-American workers, but did not speak that way to Caucasian workers, and that

on one occasion, Gibson "stated that he wouldn't mind making love with the minor daughter" of

an African American employee. (Doc. 24, at 1). Plaintiff also complains that he did not move up

to "lead person" years before, during his employment. (Doc. 21-1, at p. 327).

These allegations do not establish race discrimination or create a convincing mosaic of

circumstantial evidence of intentional discrimination. Plaintiff does not present any evidence that

anyone made any derogatory race-based comments during the relevant period or that anyone said

anything leading him to conclude that his race played a role. *See* Doc. 21-1, at pp. 333-35. Plaintiff

admitted in his deposition that he did advance in the company; he just believed he did not do so

quickly enough. *Id*. at p. 326. Plaintiff was also among the highest paid operators. *Id*.

### B.    ADA Claim

The Eleventh Circuit analyzes ADA discrimination claims under the *McDonnell-Douglas*

burden-shifting framework. To state a claim successfully under this analysis, a plaintiff must first

establish (1) that he has a disability; (2) that he is a qualified individual, meaning that he can

perform the essential functions of his job, with or without a reasonable accommodation; and (3)

that the employer discriminated against him because of his disability. *See Greenberg v. BellSouth Telecommunications, Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007).

The ADA defines "disability" as "(A) a physical or mental impairment that substantially limits one or more major life activities ... (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(1)(A)-(C)(2009). Whether an individual's impairment is a disability under the ADA does not demand extensive analysis, and "[t]he definition of disability shall be construed in favor of broad coverage of individuals." 42 U.S.C. § 12102(4)(A). *See also Mazzeo v. Color Resolutions Int'l, LLC*, 746 F.3d 1264, 1268 (11th Cir. 2014) (explaining that the primary object of ADA cases should be to determine whether covered entities have complied with their obligations and whether discrimination has occurred, as opposed to whether an impairment substantially limits a major life activity); *Smart v. Dekalb City*, 2018 WL 1089677 *6 (N.D. Ga. 2018) (quoting *Mazzeo*).

The ADA defines "qualified individual" as an individual with a disability "who, with or without reasonable accommodation, can perform the essential functions of" his job. 42 U.S.C. § 12111(8). Essential functions "are the fundamental job duties of a position that an individual is actually required to perform." *Holly v. Clairson Indus. L.L.C.*, 492 F.3d 1247, 1256 (11th Cir. 2007). If, however, "the individual is unable to perform an essential function of his job, even with an accommodation, he is, by definition, not a 'qualified individual' and, therefore, not covered under the ADA. ... the ADA does not require the employer to eliminate an essential function of the plaintiff's job." *Id.* (quoting *D'Angelo v. Conagra Foods, Inc.*, 422 F.3d 1220, 1229 (11th Cir. 2005)) (internal quotations omitted). The ADA states that "consideration shall be given to the employer's judgment as to what functions of a job are essential." 42 U.S.C. § 12111(8).

The evidence reflects that Plaintiff applied for Social Security benefits on October 28, 2019, alleging onset of disability on September 13, 2019. (Doc. 21-20, at 12, 19). The Social

Security Administration ("SSA") determined that Plaintiff became disabled on September 13, 2019, and awarded him disability benefits. *Id*. at 33; Doc. 21-1, at pp. 156-59. In his response, Plaintiff does not attempt to explain the inconsistency between his Social Security Disability Insurance ("SSDI") award and his claim that he was a qualified individual within the meaning of the ADA. Given the SSA's determination, Plaintiff cannot establish that he was a qualified individual with a disability and is therefore estopped from arguing that he is a qualified individual within the meaning of the ADA. *See Flores v. Hyundai Motor Mfg. Alabama, LLC*, No. 2:19-CV-830, 2021 WL 1910776, at *12 (M.D. Ala. May 12, 2021) ("Flores is estopped from arguing that she is a qualified individual within the meaning of the ADA because she offers no, let alone sufficient, explanation for the inconsistency between her SSDI contentions and her claim that she could perform the essential functions of her job.") (citing *Kurzweg v. SCP Distribs., LLC*, 424 F. App'x 840, 844 (11th Cir. 2011)); *Williams-Evans v. Advance Auto Parts*, 843 F. App'x 144, 147-48 (11th Cir. 2021) ("To survive a motion for summary judgment, [plaintiff] needed to explain why her contentions before the Social Security Administration were consistent with her ADA claim – but she failed to do so. She did not explain how she could be disabled yet still able to perform the essential functions of her sales position.") (citation omitted).

Moreover, Plaintiff cannot establish the third prong of his *prima facie* case because there is no evidence that the decisionmaker possessed actual knowledge of his disability at the time of the termination decision. It is well-established in this circuit that "a decision-maker who lacks actual knowledge of an employee's disability cannot fire the employee 'because of' that disability." *Cordoba v. Dillard's, Inc.*, 419 F.3d 1169, 1186 (11th Cir. 2005). In other words, "an employee cannot be fired 'because of' a disability unless the decisionmaker has actual knowledge of the disability." *Id*. at 1185 (explaining that constructive knowledge is not enough); *see also Howard v. Steris Corp.*, 550 F. A'ppx 748, 751 (11th Cir. 2013) ("Liability under the ADA requires

the employer to have discriminated because of the employee's disability as the employer had actual knowledge of the alleged disability at the time it took adverse employment action."). Therefore, as part of his *prima facie* showing, a plaintiff must present evidence that the individuals charged with the termination decision had actual knowledge of his disability. Plaintiff testified that he never asked anyone at WestRock for an accommodation and admitted that he did not have any work restrictions. (Doc. 21-1, at pp. 339, 343-44; Doc. 21-8, at ¶ 5). Also, Plaintiff presents no evidence that Gradic or Taylor, the decisionmakers, had actual knowledge of his alleged disability. Accordingly, Plaintiff fails to establish a *prima facie* case of disability discrimination under the ADA.

### C.   ADEA Claim

"The ADEA prohibits employers from firing employees who are forty years or older because of their age. 29 U.S.C. § 623(a)(1). To assert an action under the ADEA, an employee must establish that his age was the 'but-for' cause of the adverse employment action." *Liebman v. Metro. Life Ins. Co.*, 808 F.3d 1294, 1298 (11th Cir. 2015) (citation omitted). Where, as here, Plaintiff relies on circumstantial evidence to make his claim, the Court applies the *McDonnell Douglas* burden-shifting framework. *Collier v. Harland Clarke Corp.*, 820 F. App'x 874, 880 (11th Cir. 2020). Under that framework, a plaintiff bears the burden of establishing a *prima facie* case of age discrimination by showing that: (1) he is a member of a protected class (age 40 or older); (2) he was qualified for the position he held; (3) he was discharged from that position; and (4) he was replaced by, or treated less favorably than, a substantially younger person. *Liebman*, 808 F.3d at 1298; *McQueen v. Wells Fargo*, 573 F. App'x 836, 839 (11th Cir. 2014).

Plaintiff does not contend or present any evidence that he was replaced by a substantially younger person. Further, Plaintiff has not identified anyone substantially younger who was on probation and then committed the same offenses and was nevertheless retained. Plaintiff concedes

that no one told him he was terminated because of his age, made any comments to him about his age during the relevant period, or said anything that led him to believe that his age played a role in his termination. *See* Doc. 21-1, at pp. 336-37, 380. In support of his claim, Plaintiff cites a conversation he had with an employee named Sonny about an early retirement memorandum that was passed around, encouraging retirement. (Doc. 24, at 17; Doc. 21-1, at pp. 180-81). However, Sonny is an hourly employee with no supervisory or managerial authority. *See* Doc. 21-3(a). In addition, this stray occurrence does not constitute evidence of age discrimination. Accordingly, for these reasons, Plaintiff fails to meet his burden of establishing a *prima facie* case of age discrimination.

## V.     Conclusion

For the reasons stated above, it is hereby

ORDERED that Defendant's motion to strike, or in the alternative, notice of objections to portions of Plaintiff's evidentiary submission and motion to take judicial notice (Do. 26) is DENIED, that Defendant's motion for summary judgment (Doc. 19) is GRANTED. The Clerk of Court is DIRECTED to close this file.

A separate final judgment will be entered.

DONE, on this the 20th day of December, 2021.

/s/ Susan Russ Walker
Susan Russ Walker
United States Magistrate Judge